## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**CHRISTOPHER D. SMITH and MISTY SMITH,**<br><br>                        **Debtors.** | **Bankruptcy Case No. 21-40540-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

    Kameron M. Youngblood, Idaho Falls, Idaho, former attorney for debtors.

    Andrew S. Jorgensen and Jason R. Naess, Boise, Idaho, attorney for the United States Trustee.

    Heidi Buck Morrison, Pocatello, Idaho, attorney for trustees Gary Rainsdon and Sam Hopkins.

### *Introduction*

Debtors Christopher and Misty Smith ("Debtors") filed a chapter 7[1] bankruptcy petition on September 14, 2021. Ex. 424 at Doc. No. 1. In doing so, they were represented by attorney Kameron M. Youngblood ("Youngblood"). Upon finding a number of concerning issues with how Youngblood was handling his cases, the United

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION — 1

States Trustee ("UST") filed a motion for sanctions in this and over 50 other cases, of which 44 were assigned to this Court. Doc. No. 17. The Court conducted a hearing on the motions on November 18, 2021, after which it permitted supplemental briefing. Following the briefing, the motions were deemed under advisement.

After considering the record, submissions, and arguments of the parties, as well as applicable law, this decision resolves the motion. Fed. R. Bankr. P. 7052; 9014.

### *The Sanctions Motion*

In the motion in this case, the UST alleges four specific areas of sanctionable conduct: 1) violations of Rule 1007; 2) the Rule 2016(b) disclosure was misleading; 3) the fees charged to Debtors were unreasonable; and 4) the agreement between Youngblood and Debtors created conflicts of interest. Additionally, with regard to the sanctions motions filed in each of the separate cases, when considered as a whole, the UST alleges a pattern and practice of violations under § 526. As a result, the UST seeks the following monetary and non-monetary remedies:

1. Cancelling or voiding any contract or agreement between the Debtor and Youngblood under § 329;

2. Disgorging the fees Debtor paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
   a. Suspending Youngblood's practice in front of the Court until the Court is satisfied the concerns identified have been corrected;
   b. If Youngblood is allowed to practice in front of the Court again, requiring him to file a "status report" signed by the client and Youngblood in each case where he appears as counsel, attesting that:
      i. Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the client prior to filing;
      ii. The client's questions have been answered regarding the Petition,

MEMORANDUM OF DECISION — 2

> Schedules, Statement of Financial Affairs, and other documents, and the information included therein, and the client is satisfied he or she is receiving adequate representation from Youngblood; and

> iii.   The client provided Youngblood a copy of the wet signatures for the Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

4.   Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future, as a result of his intentional violations, and pattern and practice of violating, §§ 526(a)(1), (a)(2), and (a)(3).

Doc. No. 17.  The Court will discuss each of the allegations and sanctions sought.

### *Applicable Law, Analysis, and Disposition*

1. Rule 1007

Because a debtor's finances are typically private, the Court, creditors, the trustee, and UST all rely on the documents filed in the bankruptcy case for information about them.  As such, the Code, Rules, and local rules contain requirements and a timeline for filing necessary documents.  Section 521 describes a debtor's duties, including what documents must be filed.  Specifically, § 521(a)(1) requires a debtor to file certain schedules, a Statement of Financial Affairs ("SOFA"), and copies of payment advices. Rule 1007(b) lists the documents a debtor is required to file, and subsection (c) of that Rule provides the deadlines for doing so.  Of particular relevance here, a debtor must file schedules and the SOFA within fourteen days of filing the petition.  Rule 1007(c).  The Rule further allows for an extension of this time "only on motion for cause shown and on notice to the [UST]…."  *Id.*  Local Rule 1007.2 further limits extensions of time for filing required documents, providing that any extension given under Rule 1007(c):

will not be granted beyond the date set for the meeting of creditors under
§ 341(a) unless a judge orders otherwise for cause shown.  Any motion for
extension of time filed under this rule shall (a) state the date of extension
requested and (b) identify the date currently set for the § 341(a) meeting or,
alternatively, affirmatively allege that no such date has yet been set.  An
extension beyond the date set for the § 341(a) meeting will not be granted
unless the debtor has also been granted a continuance of the § 341(a)
meeting, pursuant to LBR 2003.1, and the confirmation hearing if
applicable, and provided appropriate notice thereof.

Finally, in order to put some teeth into the debtor's duty to file the required

documents, § 521(i) provides that "if an individual debtor in a voluntary case under

chapter 7 or 13 fails to file all of the information required under [§ 521(a)] with 45 days

after the date of the filing of the petition, the case shall be automatically dismissed

effective on the 46th day after the date of the filing of the petition."

In this case, the Debtor filed only a bankruptcy petition on September 14, 2021;

the meeting of creditors was scheduled for October 27, 2021.  Ex. 424 at Doc. Nos. 1 &

3.  The deadline to file all other required documents was September 28, 2021.  *Id.* at Doc.

No. 12.  No extension of the deadline was sought by Youngblood.  On December 16,

2021, another attorney entered an appearance to represent Debtors.  Doc. No. 43.

Subsequently, on January 6, 2022, the required statements and schedules were filed.

Doc. No. 51.

On November 18, 2021, at the hearing on the sanctions motion before the Court,

Youngblood indicated his inability to represent the debtors in the cases at issue and orally

moved to withdraw.  *See* Doc. No. 33.  However, there was a space of 65 days between

the date the petition was filed and November 18, 2021, when Youngblood formally

moved to withdraw from representing Debtors in this case, within which he could have

MEMORANDUM OF DECISION — 4

filed the required documents.  Finally, under § 521(i), Debtors' case could have, and should have, been automatically dismissed.  In other words, Youngblood's failure to file the required documents put Debtors' case at risk.

The Court concludes Youngblood did not comply with the Bankruptcy Code, Rules, and this Court's local rules, which provides a basis for imposition of sanctions. The UST alleges additional violations, however, that also provide grounds for sanctions.

2.  Rule 2016(b) Disclosure

*A.  Applicable Law and Facts*

Section 329 of the Code requires an attorney to disclose the amount of all compensation "paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case…."  This disclosure requirement is implemented by Rule 2016(b), which requires:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity…. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

In this case, Youngblood filed a disclosure of compensation contemporaneous with the petition on September 14, 2021 ("Disclosure").  Ex. 425.  The Disclosure indicates that Debtors paid Youngblood nothing prior to the bankruptcy filing, but that the agreed fee was $1,910 "for services rendered or to be rendered on behalf of the

debtor(s) in contemplation of or in connection with the bankruptcy case ….” *Id.*  It

further provides in paragraph 5:

> In return for the above-disclosed fee, I have agreed to render legal service
> for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the
>    debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs
>    and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and
>    confirmation hearing, and any adjourned hearings thereof;
> d. OTHER: [nothing was listed].

*Id.* (emphasis in original).  Nevertheless, the Disclosure also describes separate pre- and

post-petition fee agreements executed by Youngblood and Debtors:

> a. The first, pre-petition fee agreement was signed prior to the filing of the
>    petition for the preparation and filing of the bankruptcy petition, statement
>    about social security number, creditor list and other documents required at
>    the time of filing; and review, analysis and advisement of the typical
>    matters that are required to be performed prior to filing by a bankruptcy
>    attorney under the applicable bankruptcy and ethical rules.  Counsel's fees
>    paid under the first fee agreement (if any) are shown in Section 1 above as
>    "Prior to the filing of this statement I have received", and any fees earned
>    but not paid for the pre-petition work were waived by counsel.
>
> b. The second, post-petition fee agreement was signed after the petition was
>    filed for post-petition work to be performed, including the preparation of
>    schedules of assets and liabilities, and statement of financial affairs;
>    preparation and filing of other required documents; representation at the
>    first meeting of creditors; and other services outlined in the fee agreement.
>    Counsel's fees owed by debtor under this second fee agreement for post-
>    petition work are reflected in Section 1 above as the Balance Due.  The
>    second fee agreement allows the debtor(s) to pay these post-petition fees
>    and costs in installments over 12 months following the bankruptcy filing.

*Id.* at ¶ 9.

The text of Youngblood's Disclosure is plainly misleading and inconsistent.  First,

paragraph 5 provides that for the $1,910 fee, Youngblood will perform both pre- and post-petition services. Those include analyzing Debtors' financial situation and assistance in determining whether a bankruptcy petition ought to be filed and preparation of the petition, which are clearly pre-petition services. But for the same fee, Youngblood also agrees to represent Debtors at the meeting of creditors, which clearly occurs post-petition.

In paragraph 9, however, Youngblood inconsistently discloses that he and Debtors entered into two separate fee agreements, with the first covering pre-petition services such as the preparation and filing of the bankruptcy petition and other required documents, for which any unpaid amount of those fees and costs at the time of filing were "waived." *Id.* at ¶ 9(a). The second fee agreement covers everything else in the case, other than those tasks Youngblood excepted from the agreement in paragraph 6. *Id.* at ¶ 9(b). As such, it is unclear whether Youngblood charged Debtors anything for pre-petition services—on one hand, the Disclosure indicates the $1,910 fee covers both pre- and post-petition services, while a separate paragraph suggests Youngblood did all pre-petition work for free. This inconsistency renders the Disclosure misleading.

### B. Analysis and Disposition

The UST seeks to void or cancel the contract of employment between Youngblood and Debtors pursuant to § 329. As noted above, that section requires an attorney to disclose the compensation paid or to be paid in connection with the bankruptcy case, the disclosure of which is made by the attorney under Rule 2016.

MEMORANDUM OF DECISION — 7

Section 329(b) provides that if the compensation paid to a debtor's counsel exceeds the reasonable value for the services provided, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive…."  Courts interpreting this provision have looked beyond the quantity of fees charged and used it to redress other issues with the attorney client relationship.  *See e.g., In re Grimmett,* No. BR 16-01094-JDP, 2017 WL 2437231, at *9 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018) (fees deemed excessive because fee agreement and collection measures created conflict of interest); *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy court's finding that the fees were unreasonable given the … failure to provide competent and complete representation of the [debtors]); *In re Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996) ("The compensation to be paid to an attorney can be deemed excessive for a host of reasons, including but not limited to an attorney's failure to perform agreed upon services, failure to comply with the disclosure requirements, the existence of conflicts of interest, and the like.").[2]

There is no question that the Disclosure is internally inconsistent.  This confusion places Debtors at risk due to a lack of clarity about what services they could expect

---

[2] Finally, although not at issue here, it is questionable whether the Disclosure filed with the Court would pass muster under either *In re Castorena,* 270 B.R. 504 (Bankr. D. Idaho 2001) or *In re Grimmett*, 2017 WL 2437231.  An Idaho bankruptcy court in *In re Castorena* prohibited the practice of "unbundling" legal services, holding that when an attorney agrees to represent a client in a bankruptcy case, that attorney agrees to provide a number of fundamental services such as filing schedules, appearing at the § 341 meeting of creditors, and other services.  270 B.R. at 530. The *Grimmett* court reaffirmed that holding.  2017 WL 2437231, at *6–7.

MEMORANDUM OF DECISION — 8

Youngblood to perform for the agreed upon sum.  In this case, the Court finds that

cancelation of the contract between Youngblood and Debtors is warranted.

The Court now turns to the issue of disgorgement.  The Bankruptcy Code's

disclosure requirements are mandatory, and courts have held that an attorney who fails to

comply with those requirements forfeits any right to receive compensation.  *Hale*, 208

B.R. at 930–31 (citing *Peugeot v. United States Trustee (In re Crayton),* 192 B.R. 970,

981 (9th Cir. BAP 1996)).  Once the bankruptcy court determines that an attorney has

violated § 329 and Rule 2016, the bankruptcy court has the authority to order the attorney

to disgorge all of the attorney's fees.  *Hale,* 208 B.R. at 931; *In re Blackburn*, 448 B.R.

28, 43 (Bankr. D. Idaho 2011) ("The state of the law is clear—an attorney who neglects

to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently,

forfeits the right to receive compensation for services rendered and may be ordered to

return fees already received.").  Indeed, the Tenth Circuit has held that "full disgorgement

is [not] always appropriate for failure to disclose under § 329[,] [b]ut it should be the

default sanction, and there must be sound reasons for anything less." *SE Prop. Holdings,*

*LLC v. Steward (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020).  The Ninth Circuit

has held that even a dnegligent or inadvertent failure to fully disclose relevant

information under Rule 2016 may result in denial of requested fees.  *Neben & Starrett,*

*Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995).

Finally, the caselaw is clear that filing an inaccurate disclosure statement "is appropriate

basis for the total disallowance of compensation by counsel.")  *Grimmett*, 2017 WL

2437231 at *10; *see also Hale,* 208 B.R. at 931; *Law Offices of Nicholas A. Franke v.*

*Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *Park–Helena Corp.*, 63

F.3d at 881–82.  Here, Youngblood's Disclosure was inconsistent and unclear, and

provides grounds for disgorgement of the entire $1,910 fee paid to him in this case.[3]

## 3.  Conflicts of Interest

The UST next alleges that the language in the Disclosure filed in Debtors' case

creates a conflict of interest prohibited by the Idaho Rules of Professional Conduct.

The Disclosure filed provides details about the financial agreement between

Debtors and Youngblood.  First, Youngblood explains the fee options available to

Debtors, as follows:

> Counsel offered debtor(s) two options for the payment of counsel's fees:
> (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being
> filed, or (2) bifurcate the attorney services into pre- and post-petition work
> in order to facilitate the debtor(s) obtaining the benefit of being filed right
> away and making payments post-petition for post-petition work.  Counsel
> charges a higher fee for the second option.  There are a number of reasons
> for charging a higher fee:
>> a.  Counsel performs additional work to split the engagement;
>> b.  Counsel takes on risk by allowing the debtor to pay the attorney
>> fee over time instead of collecting the entire fee up front;
>> c.  The option provides the debtor(s) with the benefit of a quicker
>> filing than if the debtor(s) had to come up with the money to pay in
>> advance;
>> d.  The option gives debtor(s) an opportunity to begin rebuilding
>> their credit score by making timely payments toward the attorney
>> fee;
>> e.  Counsel will not charge the debtor additional fees for certain
>> services that if required would otherwise cost the debtor(s) more if
>> debtor(s) had paid the entire fee before the case was filed; and
>> f.  FSF (described below) charges a fee to Counsel for its financing,
>> payment management, credit reporting and other services provided

---

[3] The Disclosure indicates that "the fees described above [the $1,910 fee] **DO NOT** include the filing
fee." Ex. 425 at ¶ 7 (emphasis in original).  As such, the Court surmises that Debtors paid the filing fee
separately.

MEMORANDUM OF DECISION — 10

> to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.
>
> This higher fee nonetheless satisfies the reasonability requirement under Section 329 applying the Lodestar analysis. The additional cost was fully disclosed to debtor(s) and debtor(s) chose the second option.

Ex. 425 at ¶ 8. Thereafter, Youngblood explains in paragraph 10 the third-party lender he uses to finance this second option:

> Counsel has a recourse line of credit from Fresh Start Funding, L.L.C. ("FSF") secured by a lien against the accounts receivable of counsel, including amounts owed by debtor(s) to counsel. FSF also provides payment management and processing services and will collect installment payments from debtor(s) as well as any third-party guarantor (if applicable) on behalf of counsel. FSF will apply amounts paid by debtor(s) against counsel's indebtedness to FSF under the line of credit. FSF also provides credit reporting services to the debtor(s), education and training to counsel and his/her staff, and a defense guaranty and indemnity to counsel. For its services, FSF charges a fee calculated as 25% of the receivable owed by debtor(s) to counsel and counsel is required to pay this fee regardless of whether debtor(s) makes their required payments. As a fully-recourse obligation this fee does not constitute fee sharing under the Bankruptcy Code or the Rules of Professional Conduct.

*Id.* at ¶ 10.

This arrangement specifically provides that Youngblood is having Debtors pay their fees under an installment contract. The Court finds this problematic. As the UST points out, this arrangement violates the Idaho Rules of Professional Conduct. Those professional rules apply to attorneys practicing before this Court. Local Bankruptcy Rule 9010.1(g) provides that the "members of the bar of this court shall adhere to the Rules of Professional Conduct promulgated and adopted by the Supreme Court of the State of Idaho."). *Grimmett*, 2017 WL 2437231 at *5.

MEMORANDUM OF DECISION — 11

Pertinent here, Idaho Rule of Professional Conduct 1.7 governs conflicts of interest and provides that a lawyer shall not represent a client if "there is a significant risk that the representation of one or more clients will be materially limited by … the personal interests of the lawyer…." Idaho Rule of Professional Conduct 1.7(a). Such conflicts may be overcome if, *inter alia*, the client gives informed consent, confirmed in writing. Idaho Rule of Professional Conduct 1.7(b). The arrangement established in the Disclosure is essentially an installment payment plan, with the payments being assigned to a third-party for collection, giving Youngblood access to a line of credit.

The Court has no information about the specifics of the financial arrangement between Debtors and Youngblood's third-party financer. The Disclosure says only that Debtors have up to 12 months post-petition to pay the fees. Ex. 425. When Youngblood filed the Disclosure, it was unclear whether this payment arrangement put Debtors at financial risk, as no schedule I or J had been filed in their case.[4] Thus, while it appears from the face of the documents in the Court's docket that Youngblood may have signed Debtors up for a plan that was potentially financially harmful to Debtors but beneficial to himself, the UST has not proven this is the case. Accordingly, the Court does not find that Youngblood's Disclosure created a conflict of interest in this case.

4.  Reasonableness of Bifurcated Fees

The Court will next take up the UST's assertion that the bifurcated fees paid in this case were unreasonable. The UST argues that because the Disclosure provides that

---

[4] On January 6, 2022, after new counsel had appeared in the case, schedules I and J were filed and indicated that Debtors had less than $1 monthly net income. Doc. No. 51.

Youngblood is charging nothing, or in the verbiage of the Disclosure, he "waives" the fees for pre-petition services, then his post-petition services are therefore worth $1,910. The UST contrasts this figure with those cases where the fee is not bifurcated—where the debtor pays in cash up front. The UST's theory is that if Youngblood's post-petition services are worth $1,910, then a cash deal should be for more money, as the debtor is also paying Youngblood for his pre-petition work. To prove this point, in the body of the sanctions motion, the UST considered all of Youngblood's open chapter 7 cases where the payment was made in cash and averaged the total fee charged. The UST then did the same with the bifurcated cases, but first subtracted the 25% fee that the company providing the line of credit charges Youngblood for this service, and then averaged the remaining fee amounts. The UST found that the cash payment fee was only $18.71 more than that charged in the bifurcated cases. From this the UST concluded that either Youngblood's pre-petition work was only worth $18.71 on average, which is implausible, or that the bifurcated fees were unreasonable.

The Court cannot reach the same conclusion on the evidence presented. Whether fees charged are reasonable is specific to each individual debtor's case and cannot be based on the law of averages. Each case is different, and what is a reasonable fee to charge one debtor may not be so for the next. Moreover, the Court cannot say that it is per se unreasonable for an attorney to offer a discount to clients who pay in cash. Law offices have overhead expenses and require a certain cash flow to sustain operations. As such, cash in hand is more valuable than cash over time. The fact that a cash discount is offered does not render the bifurcated fee unreasonable. Accordingly, the UST's motion

MEMORANDUM OF DECISION — 13

for sanctions due to the unreasonableness of the fee charged will be denied.

5.  Sanctions

As noted above, because of the Rule 1007 violation and the inconsistencies and confusion in the Disclosure filed in this case, cancellation of the attorney/client contract between Debtors and Youngblood and disgorgement of Youngblood's fee in the amount of $1,910 in this case is warranted.

In addition to those sanctions, the UST seeks injunctive relief as well as a civil penalty.  The Court concludes that injunctive relief under both § 526 and its inherent powers is appropriate here.

A.  *"Pattern and Practice" of Violations Under § 526*

Section 526 of the Code provides restrictions on "debt relief agencies."  It provides, in pertinent part:

> (a) A debt relief agency shall not--
> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;
> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—
> > (A) the services that such agency will provide to such person; or
> > (B) the benefits and risks that may result if such person becomes a debtor in a case under this title;
>
> * * * * *

MEMORANDUM OF DECISION — 14

(c)(5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may--

> (A) enjoin the violation of such section; or
> (B) impose an appropriate civil penalty against such person.

A bankruptcy attorney is a debt relief agency.  *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S. Ct. 1324, 1329, 176 L. Ed. 2d 79 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency.")  The Code also defines "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425.[5]  Youngblood qualifies as a debt relief agency for each of the cases before this Court in which the sanctions motion was filed, as each of the debtors checked the box indicating his or her debts consisted of primarily consumer debts, and the value of their nonexempt property was less than $204,425.

As the statute above indicates, if a debt relief agency represents to an assisted person that it will provide certain services in connection with a bankruptcy case, and then fails to perform those services, the debt relief agency has violated § 526(a)(1).  Moreover, § 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted

---

[5] This figure was originally $150,000, and was adjusted to $204,425 effective April 1, 2019.  The amount increased recently to $226,850, effective April 1, 2022.  All cases at issue here were filed when the amount was $204,425.

person to make, a statement in a document that is filed with the court, that is untrue or

misleading, or using reasonable care should have been known to be untrue or misleading.

Finally, if a debt relief agency misrepresents the services that it will provide to an assisted

person or the benefits and risks that may result if such person files a bankruptcy petition,

then § 526(a)(3) may have been violated.

Moreover, if the violations of § 526 are determined to be intentional, or if a clear

and consistent pattern or practice of violating § 526 is found, the statute permits the court

to enjoin the violation and impose a civil penalty against the attorney.  § 526(c)(5).  The

UST argues that it has demonstrated a pattern and practice of violations of § 526 and has

asked for both an injunction and the imposition of a civil penalty in this case.

The Court finds that a clear and consistent pattern and practice of violating § 526

has been demonstrated.  Recall, if Youngblood, as a debt relief agency, made an untrue or

misleading statement in a document that is filed with the court, § 526(a)(2) has been

violated.  Moreover, if Youngblood, as a debt relief agency, failed to perform any service

that he informed the debtor he would provide in connection with the case, such is

likewise a violation of § 526(a)(1).  Of the forty-four cases assigned to this Court in

which the UST filed the sanctions motion, this Court has determined the following:

| | |
|---|---|
| Violation of Rule 1007 and § 521: | 20 cases |
| 2016(b) disclosure was misleading: | 31 cases |
| 2016(b) disclosure was inconsistent: | 31 cases |
| Conflict of interest in fee agreement: | 23 cases |

The UST has established a clear pattern and practice of violating § 526.  *See In re*

*Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was

established by the fact that bankruptcy courts in three other jurisdictions had sanctioned

the bankruptcy firm and/or its principal for abandoning debtors, and a motion was

pending in a fourth jurisdiction.)  Such violation exposes Youngblood to both injunctive

and civil penalties.

### B.  The Court's Inherent Powers

The Supreme Court has made it clear that an Article III federal court has

the inherent power "to control admission to this bar and to discipline attorneys who

appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).  The Ninth Circuit

recognizes that bankruptcy courts also "have the inherent power to sanction

that *Chambers* recognized exists within Article III courts."  *Caldwell v. Unified Cap.*

*Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re*

*Aleman*, No. 14-00606-TLM, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29,

2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A

bankruptcy court has the authority to regulate the practice of lawyers who appear before

it.  Such authority stems from the court's inherent powers, the Code and the Rules.");

*Gardner v. Law Office of Lyndon B. Steimel (In re Valentine),* 2014 WL 1347229, at * 3

(Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit

precedent, the bankruptcy courts have the power to sanction under their civil contempt

authority under § 105(a) and under their inherent sanction authority." (internal quotations

omitted)).

These inherent powers are not without limits, however.  "Because of their

potency, inherent powers must be exercised with restraint and discretion."  *Chambers*,

501 U.S. at 44.  Thus, like the bankruptcy court's civil contempt authority, inherent sanction authority "does not authorize significant punitive damages."  *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth Circuit has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority").  "Civil penalties must either be compensatory or designed to coerce compliance."  *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.  *Chambers*, 501 U.S. at 50.

### C.  Injunctive Relief Sought

Initially, the Court notes that it is possible Youngblood no longer intends to practice law.  He indicated at the hearing on this motion that he was unable to represent the Debtor and asked to withdraw from the cases in which the sanctions motions had been filed.  Moreover, since the hearing, the Court has been informed that Youngblood has not paid his annual bar dues, and on March 14, 2022, the Idaho Bar Association suspended him from the practice of law.  As a result, this Court issued a reciprocal notice of suspension and turned off Youngblood's electronic filing privileges.  Nevertheless, operating on the assumption that Youngblood will one day return to practicing law, the Court will consider the UST's request for injunctive sanctions.

In the motion, the UST seeks several forms of injunctive relief.  The Court will consider each.  First, the UST requests suspension of Youngblood's practice before this Court until the Court is satisfied that the issues raised in the pending motion have been corrected.  At present this is moot, as Youngblood currently has no filing privileges.

Next, the UST seeks to require Youngblood to file a "status report" or other document with the Court in each case where he appears as counsel, for as long as the Court deems necessary.  This report is intended to provide guard rails to channel Youngblood's practice to conform with the Code, Rules, and Idaho Rules of Professional Conduct.  Specifically, the UST envisions this report to include what is essentially an affidavit of the debtor bearing a wet signature as well as a certification by Youngblood indicating:

> 1)  that Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the debtor prior to filing;

> 2)  that the debtor has had his or her questions answered and is satisfied with Youngblood's representation; and

> 3)  that the debtor has provided, and Youngblood will retain, copies of the wet signatures filed in the case.

The Court concludes most of these provisions are appropriate.  The requirement to retain the debtors' wet signatures in all cases not only complies with what is required of an attorney filing electronically, but will ensure Youngblood obtains and files wet signatures for the debtors in their respective cases.  Moreover, a statement from both Youngblood and his clients that Youngblood has met with the client and reviewed all important documents prior to filing will serve to align his new practice with his legal and

MEMORANDUM OF DECISION — 19

ethical obligations.

Next, while the UST's request for a statement from the debtor that his or her questions have been answered and he or she is satisfied with Youngblood's representation is well-meaning, the Court does not find it appropriate.  Instead, the Court will order that the client provide a statement that he or she has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.  The Court will not require that every client be "satisfied" with Youngblood's representation, however.  The Court understands that client satisfaction is dependent on many different factors, and that counsel may be doing an excellent job and complying with all statutes, Rules, and ethical obligations, yet the client could remain unsatisfied for some reason.  Thus, the Court will not order this relief.

### D.  Civil Penalty

Finally, the UST asks that the Court impose a civil penalty pursuant to § 526(c)(5)(B)[6] to deter him from making untrue and misleading statements and representations in the future.  While § 526(c)(5)(B) permits the imposition of a civil penalty where a pattern and practice of violations has occurred, the Court declines the UST's invitation here.

A civil penalty must be appropriate in amount and intended to deter violative conduct in the future.  *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R.

---

[6] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may … (B) impose an appropriate civil penalty against such person."

MEMORANDUM OF DECISION — 20

726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr.

M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S. Ct.

497, 499, 93 L. Ed. 599 (1949) (a civil sanction is "remedial in nature and intended to

enforce compliance.")).  While the UST has established a clear and consistent pattern of

violations on Youngblood's part, the Court finds a civil penalty unnecessary as a

deterrent.  By this decision and the corresponding order, the Court will require both

disgorgement of the fees paid in this case as well as significant record keeping and

reporting requirements in future cases.  These measures are designed to curtail

Youngblood's cavalier approach to the practice of law and ensure that his future practice

conforms to applicable statutes, Rules, and ethical responsibilities.  As such, an additional

deterrent in the form of a civil penalty is unwarranted here.

### *Conclusion*

Finding merit in some of the allegations raised in the UST's motion for sanctions,

the Court will 1) cancel the attorney/client contract between Youngblood and the

Debtors; 2) order disgorgement of the $1,910 in fees Debtors paid to Youngblood for his

services in this case, and 3) impose injunctive relief as follows:  should Youngblood

return to the practice of law, he will have to obtain, file, and retain each debtor's wet

signatures in accordance with the requirements of the Code, Rules, Local Rules, and the

Court's ECF Procedures; he will have to file a statement bearing a wet signature from the

client, attesting that Youngblood has met with the client and reviewed all important

documents prior to filing; and finally, that the client has had a reasonable opportunity to

converse with Youngblood and to ask questions, and that Youngblood has responded to

MEMORANDUM OF DECISION — 21

those questions.  The Court will not find that the Disclosure created a conflict of interest, that the bifurcated fee is unreasonable on the evidence presented, nor will it impose a civil penalty.

A separate order will be entered.



DATED:  May 5, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE